Good morning, everyone. Thank you. The first case on the call this morning is case number 119561, People v. Wright, Agenda No. 8. Counsel ready? Yes, Your Honor. You may proceed. Mr. Chief Justice, it may please this Honorable Court. I'm Assistant State's Attorney John Walters, and I represent the people of the State of Illinois in the matter before you. The people, with respect, ask this Court to adopt the same substantial compliance analysis in Rule 401 as it has adopted in its sibling rule, Rule 402. Why is it necessary to do that? Don't we already have case law concerning this same rule in terms of People v. Haynes? Why do we need something other than the standard that we've been working with since 1986? Well, that's just it. There was a quartet of cases that addressed Rule 401, beginning with People v. Johnson, 119, Illinois 2nd, 119, and ending in People v. Kidd, which was decided in 1997. Haynes was in 1996. So it's been approximately 20 years since this Court has last addressed the substantial compliance analysis. In that time, this Court has had numerous opportunities to develop the law with respect to Rule 402, which is a sibling rule, which addresses all the same policy considerations that Rule 401 addresses. And therefore, this Court should use this opportunity to employ the same wisdom that it has used in addressing Rule 402 and apply that to Rule 401. So we know what the standard is that we're talking about here. Haynes, this case from some time ago, said, Strict technical compliance with Rule 401A, however, is not always required. Rather, substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights. Should we abandon that standard? I would say not so much abandon it as look to how substantial compliance has developed, has evolved, with respect to Rule 402. Some of the same considerations that go into that analysis still remain. Obviously, the most important is, and the very reason that these rules exist, is to ensure a knowing and intelligent waiver of Sixth Amendment rights. And nothing that I say here today is meant to sever that requirement from the substantial compliance test. I want to reaffirm that we, the people, are very concerned that these admonishments show a knowing and intelligent waiver on the record. But one of the problems that's developed in the test, as it had been since 1996-1997, is really illustrated by this case in several ways. This particular case in the appellate court demonstrates some problems that have developed in Rule 401 analysis, and why it would be a spectacular idea to apply the wisdom that this Court has employed in Rule 402 to Rule 401. There are multiple errors in this case that the appellate court did in this case. One is that it equated a mere flaw in the admonishment with a lack of substantial compliance. And the problem there is that if substantial compliance is not only the name of the test, but it's an independent factor, an independent prong in the analysis, it can lead to just this sort of problem where any flaw in the admonishment suddenly becomes a lack of substantial compliance. And that is exactly what happened in this case. And it points to a problem in the analysis. Going on, the appellate court then, simply because it had equated a mere flaw in the admonishment with a lack of substantial compliance, decided that the waiver was not knowing and intelligent. It did not look to the record as it should have. It should have looked to the record because this is the very purpose for these rules, to ensure a knowing and intelligent waiver. And oftentimes, the record itself is very evocative. It elicits, all on its own, whether the accused has knowingly and intelligently waived rights. In this particular case, this defendant was admonished not once, but twice. The circuit court took this rule very seriously, Rule 401. It did not ignore this rule. It did not abandon its duty under this rule. One judge in the circuit court admonished this defendant. On the very next court date, a different circuit court judge took it upon himself to re-admonish this defendant to ensure that he made a knowing and intelligent waiver. It seems like the state mentioned at one point the 75 years at the sentencing hearing. Is that right? Mentioned it at the sentencing hearing, yes, Your Honor. Does the record reflect that the court simply proceeded as if the 60 years was the maximum? So the technical mistake had no impact on the sentence ultimately imposed? The judge himself made no explicit comment on that point. I would point out, though, that the prosecutor, in addition to saying that the maximum was 75, the prosecutor argued that the maximum that the prosecution was seeking in this case was 60 years. So in effect, the prosecution was saying that even though the theoretical maximum was 75, the prosecution valued this case as a maximum of 60 years. How do you address the defendant's argument that the ultimate sentence may have been impacted by the possible highest sentence? Well, you know the argument. Yes, Your Honor. I think the first and most important thing is to look at the admonishments at the time they're given and what the defendant knew at the time that those admonishments were given. I submit to Your Honors that in this case, at the time that these admonishments were given, notwithstanding the flaw in the admonishment, this defendant had sufficient information to make a knowing and intelligent waiver, notwithstanding the error in this case, besides the fact that, as I was saying before, the defendant had been fully admonished. And I represented the second admonishment at length in my brief. And the reason I did that is because I wanted to demonstrate for this Court how thoroughly and how fully the second judge went through the admonishments, went into the defendant's background, was very concerned about compliance with Rule 401. But every other aspect of Rule 401 was complied with in this case, but for the flaw between 60 and 75 years. But looking at that, this is a defendant who was 37 years old. He was 37 years old at this time. And what he was admonished was he could have a potential sentence of 60 years. Now, maybe for some defendants, the difference between 60 and 75 years might be substantial, but when you're 37 years old and you're told that the maximum sentence that you're facing could be up to 60 years, for a 37-year-old defendant, that might well be the rest of his life in prison. So the difference between 60 and 75 in this case was quite marginal. There's no great abyss or gulf for this particular defendant between 60 and 75 years. This defendant, as I said, in all other respects, Rule 401 was strictly complied with. Strictly complied with. So this defendant knew, had sufficient information at the time that he pled, to make a knowing, I'm sorry, at the time that he waived counsel, had sufficient information to make a knowing and intelligent waiver. Now, with respect to the argument about, well, if the max sentence might have impacted the judge, one thing to take into consideration is that the prosecution, again, at sentencing, said, Judge, we value this case at 60 years, putting a cap of 60 years. So if it's really true that we need to look somehow to what the judge is thinking at sentencing with respect to Rule 401 or 402 admonishments, the fact of the matter is that the prosecution had already capped the value of the case at 60 years. But more important than that, really more important than that, is that's really not the issue. We shouldn't be looking to what a sentencing judge might be thinking. What's really important here is that the defendant, A, has sufficient information at the time of the admonishments to make a knowing and intelligent waiver. That's really the sine qua non of these rules, to ensure a knowing and intelligent waiver at the time of the admonishment. But I think the importance of what happened at sentencing, the fact that this defendant did not receive a sentence greater than what he had been told, is that it further demonstrates that this defendant was not misled in these admonishments. He was not prejudiced. He was not misled into making an unknowing or unintelligent waiver in this case. Now, I mentioned before there were multiple errors that the appellate court did in attempting to comply with the old standards of Rule 401. And I mentioned before equating substantial compliance, sort of turning it into a rule of strict compliance, ignoring the record with respect to whether the waiver was knowing and intelligent. The third prong of that is really, really also very concerning in this case. The appellate court, on its own, is almost as if hermetically sealed, has developed a body of law with respect to prejudice that is really independent of this court's analysis. This court has always, repeatedly, said with respect to both rules, 401 and 402, that the rule is one of substantial compliance, not strict compliance. Said that in multiple ways, held that in multiple cases. The problem here is that the appellate court has developed a body of law where prejudice can only be cured if it's somehow shown that the defendant knows the proper sentencing range. And only in that circumstance. Now, the appellate court subdivides that into two different possibilities, but it really amounts to the same thing. Did the defendant somehow know the correct sentencing range? That's very problematic. First of all, again, that's not the standard that's been set up by this court. This court has considered other factors in looking at whether the defendant has been prejudiced, whether real justice has been denied in admonishments. This court has considered whether the defendant received a sentence that was within the term of the admonishments that were given. This court has looked to the record to see what were the reasons that the defendant waived these Sixth Amendment rights in the first place? Did they hinge on the improper admonishment? In that case, it could well be argued that the defendant would have been prejudiced by misleading admonishment. But in this particular case, and in so many other cases of this court, especially with respect to Rule 401, this court has looked to the reasons, the rationale for waiving rights, and has found that when that rationale has nothing to do with the admonishments that were given, there's no prejudice. So this body of law developed. It has its roots in a case called People v. Reed that was decided even before People v. Johnson. Johnson was the first of the four cases that dealt with Rule 401. Reed was an appellate court case that was decided well before Johnson. And this body of law that the only way that there can be no prejudice is if the defendant knows the exact sentencing range,  and there's never been any attempt to reconcile this view of prejudice with this court's view of prejudice. No attempt at all has ever been made. The appellate courts never looked at this court's application of substantial compliance and tried to address the fact that, oh, we only allow prejudice in these two limited areas. So there are major flaws with how the appellate court applied the substantial compliance test in this particular case. And that's one of the reasons why this presents an outstanding opportunity for this court to apply the wisdom that it's gleaned over the years in applying Rule 402 cases to Rule 401. And again, these rules emanated, they originated as the same rule. They both exist for the same exact reason, which is to ensure knowing and intelligent waivers of Sixth Amendment rights. And all those rights in the Sixth Amendment, all those rights that have been duplicated in our Illinois Constitution of 1970, they are fundamental rights. And the right to self-representation, no less so. I want to talk about that fundamental right just briefly here. The leading case is from the United States Supreme Court, Feretta v. California. And Feretta is very important for this court's analysis of this issue. Feretta said that what was required, the Feretta court did not set out an exact laundry list of things that a defendant must know in order to waive counsel, in order to proceed pro se. Just the opposite. The Supreme Court in Feretta was very concerned that there not be substantial barriers to a defendant who chooses to waive counsel, which that might be. The Supreme Court was concerned that there not be substantial barriers set up. So a defendant is not required to have technical legal knowledge in order to waive counsel. All that the court in Feretta required is that the defendant be made aware of the dangers of self-representation so that his choice to waive is made with his eyes wide open. That is the language that we have from the Supreme Court on the leading case on the fundamental right of self-representation. With respect to this particular case, applying Feretta, applying Rule 401 to this particular case, there was substantial compliance here. This defendant did make a knowing and intelligent waiver of his right to counsel. Looking at the admonishments, as I said before, they illustrate that this defendant had sufficient information at the time of the admonishment to make a knowing and intelligent waiver, but also that he was not misled. As I pointed out in the brief, he knew what the risks were of self-representation. He willingly undertook that self-representation knowing that he could receive a sentence of as much as 60 years, and he in fact received a lesser sentence than that. So in this particular case, real justice has not been denied. That's the 402 standard. Whether the defendant has been prejudiced and whether real justice has been denied. This is a case about fairness and about real justice. And in this case, what fairness and justice dictate is that this defendant did receive, there was substantial compliance with Rule 401, and therefore this defendant was sufficiently admonished, made a knowing and intelligent waiver of his right to counsel, and the appellate court should have affirmed and not reversed. Does this court have any questions with respect to Rule 401 or 402? Unless this court has any questions with respect to the other issues raised on cross-relief, the people respectfully request that this court affirm defendant's convictions in this case, reverse the ruling of the appellate court in this case with respect to its Rule 401 analysis. Thank you, Your Honors. Thank you. Counsel. May it please the Court. Pete Skro for Eugene Wright. The parties here agree that the purpose of Rule 401A is to ensure that there's a knowing waiver of counsel on the record. The question is whether knowledge of the maximum sentence is required for that knowing waiver, or I think more specifically here, can there be a knowing waiver when the trial court understates, affirmatively misrepresents the maximum sentence that the defendant faces? Are we even to consider, Mr. Skro, that it seems like from the record here that the decision of the defendant in this case had more to do with him wanting a speedy trial and no delays than it did severity of the sentence? Does that impact our decision at all? I don't think it should, Your Honor, because the reason someone waives does not negate the need for a knowing waiver. And I realize that in Kidd and Johnson and Coleman, there is some discussion of the defendant's waiver, but that only came after this court determined that there was a knowing waiver. I think it would really just negate the whole purpose of Rule 401A, because if you look at almost every single case cited in all the briefs, there's two reasons defendants waive counsel. One is to demand speedy trial, and the other is dissatisfaction with counsel. So I think if we were to adopt a rule saying, well, the reason they waive impacts on whether there should be a knowing waiver, would essentially just negate the whole requirement for 401A, because I also think if you look at what this court said in People v. Whitfield, it would be unfair to put the onus on the defendant to state that the sentencing range or what the purpose of the admonishments is the reason for the waiver. The onus of admonishments is on the trial court to ensure that the defendant knows what he's doing. So, no, Your Honor, I don't think that should impact this court's decision. I think the fundamental question, as is outlined in Haynes, is does the record demonstrate a knowing waiver? Whether through the admonishments, or like what happened in Coleman and Johnson, is maybe the admonishments were incorrect, but the record shows that the waiver was knowing because the defendant knew the incorrect or omitted information. With regard to that, where in the proceedings can we look to in order to determine where a defendant was prejudiced by the failure of the admonishments of Rule 401? Well, I think when we talk about prejudice in the context of 401A, the prejudice is whether there was a knowing waiver. If the record shows that the waiver was knowing, for instance, what happened in Coleman, where the trial court mistakenly misstated the minimum sentence, but the record clearly showed that the defendant knew the minimum sentence, then there's no prejudice. But I think you cannot have a prejudice analysis of a non-knowing waiver of counsel. If the waiver of counsel is not knowing, that is the prejudice. It's like a non-knowing jury waiver or denial of a right to counsel of choice. If that happens, there's a Sixth Amendment violation, and you don't examine the record further to find out whether it was prejudice. A non-knowing waiver is the prejudice. Is any misstatement or mistake in the sentencing range sufficient to produce a non-knowing waiver? Well, I don't think, of course, there could be de minimis misstatements of the law or, you know, say like in People v. McCoy, which is a 402 case, not mentioning MSR or something. But I don't think in this case a 15-year understatement of the maximum sentence, I don't think that could establish a knowing waiver. So I think, I mean, there's not much in 401A, but what is in 401A is vitally important. And opposing counsel said to look to Ferretti v. California, which I think this court should, and it said the trial court must ensure that the defendant makes this decision with his eyes wide open. And Ferretti relied on Von Moltke v. Gillies, where they specifically said, for there to be a knowing waiver of counsel, the U.S. Supreme Court, the trial court must inform the defendant of the minimum and maximum sentence he faces. So Ferretti saying that the defendant's eyes need to be wide open when making this decision, that's part of what he needs to know. And, you know, counsel said in Ferretti they didn't lay out a whole series of what needs to be said, but this court did in 401A when they enacted 401A. They specifically said the plain language is minimum and maximum sentence must be, the defendant must be informed and the court must ensure that he understands. And, you know, counsel has to look to 402 and the substantial compliance tests that have arisen around 402 and 605. I think it's interesting that 401A does not have a substantial compliance in the body of the rule, whereas 402 and 605 both say the trial court must substantially comply with the following. 401A does not have that language. And, you know, I'm not saying that's determinative, but I think it is telling about how important 401A is. And yet we have this history of case law from this court using the expression substantial compliance, and the argument here is that you are arguing that for strict compliance either the numbers are right or the numbers are not right. How do we deal with the fact that we've had a long history of language about substantial compliance? Well, and I'm not arguing for strict compliance in the sense that every misstatement requires a reversal. But I think if you, every misstatement that the record does not establish a knowing waiver requires a reversal. So it's, I think if, like, yeah, if you look at Haines, this strict technical compliance is not always required. If the record shows there was a knowing and voluntary waiver, and the record shows that the admonishments did not prejudice the defendant, I think in an appellate court decision people leave bars, they said it pretty well. That's an and, not an or there. That means the threshold question is whether there was a knowing waiver, either through the admonishments or through the record. Should a court look beyond the number, how many years we're talking about here, and look at the entire record, or is the court, should this court and the reviewing court only be looking at this aspect of what the numbers were? Or, for example, what the defendant may have said on the record as to why he wanted a waiver counsel or his experience and history and that kind of thing. Should the court look at that, or are those all factors that should be ignored? Well, I think the court should only look at that if, the court should look to the record, of course, to find whether the waiver was knowing. But in the case of the sentencing range, which is a vital part of 401A, if the record shows that the defendant knew the correct range, despite the erroneous admonishments, then I think, yes, the court could look to the record, like it did in Coleman and Johnson, and find that despite the erroneous admonishments, there was a knowing waiver. There was no requirement, there was not a mandatory reversal if the purpose of the rule was fulfilled. But if the trial court understates the maximum sentence and the record, you can look to the record, but if it does not show that the defendant otherwise knew, then I don't think it would be appropriate to look to the defendant's stated reason. I think 401A is different than 402 in one important regard. It's there to protect one of the most fundamental rights that through all other rights are protected, the right to counsel. And when a defendant waives counsel, if you look at the admonishments that happened here, the trial court very clearly stated, when you waive counsel, that's it. You can't go back. If you find yourself in the middle of this trial, and you feel that you're overwhelmed, you're on your own. So at that point, when he waives, it's a very dire decision. Of course, it's his right, but the trial court has a duty to ensure that he does it knowing the sentencing range. It's very different than, say, 402 or 605, when you have a defendant represented by counsel agreeing to plead guilty in exchange for a certain sentence and then trying to come back on appeal and say, like people in McCoy, well, you didn't tell me about MSR. I think 402 and 605 are instructive, but they're not determinative, and I don't think there should be a watered-down substantial compliance test for 401A, because the right is so fundamental. Should we look, as the State has suggested, to the defendant's age? Here, the court admonished him that he would be risking a penitentiary sentence up to 60 years, which would mean that he'd be 97 by the time he could be released. The State suggests that whether it's 97 or, my math is not that great, but 100 and whatever, another 15 years on top of that, at the end of the day, this defendant was warned that he had a potential de facto life sentence in front of him. Well, in this case, this is a 50% crime, so it wouldn't be 97. You know, he would be out. So I do think that, yes, in some cases, I would put that under the category of, yes, some de minimis. If the defendant is told you're facing a minimum of 200 years and he gets 300 or something, you know, yes. But this is a 50% crime, so it wasn't like he was looking at a de facto life sentence here, regardless of the sentence. And so, yes, I think in some cases that could matter. In this case, no, because I think if you look, he was not facing a de facto life sentence, and 15 years is a significant difference from what he was told he faced. I mean, I think the purpose of Rule 401A is to remove these doubts. I mean, it's got to be on the record. And I think the state's proposing a test that I'm not sure I understand exactly how we would arrive at determining in each case whether, you know, if we're going to start trying to engage in guessing games of, well, was it a definitive waive if you've been told this or if you've been told that? That's what Rule 401A was designed to prevent, is to make sure that this is on the record, to remove all doubt that the waiver was noting. In this instance, are you arguing that the record would have to show that the defendant somehow knew that the real max was 75 years in order to be compliant? In this case, yes, Your Honor. I think the test has been set forth in some of the appellate courts and people view bars and people view the floor. It's a very simple test. It recognizes the importance of Rule 401A. It doesn't say that there's automatic reversal for noncompliance, but if the purpose of the rule has not been fulfilled, if the defendant doesn't otherwise know the sentencing range he faces, then, yes, it should be reversed. I think the test is a much more straightforward and simple test. And I think it's in holding with this Court's prior decisions in Coleman and Haynes and Johnson. I mean, in those cases, it was clear from the record that the waiver was knowing because of other things that happened during the proceedings. I think, as I said previously, I don't think it's appropriate to start looking through all these other things about defendant's stated reason for waiving or whatever. The fundamental question, the threshold question is whether the waiver was knowing. And the plain language of 401A is clear. I mean, this Court said in Campbell, these rules are to be given as written. And this is not a high burden on the State or the Court. I mean, all that had to happen is what happened at sentencing, which is to inform the defendant of the actual sentencing range he faces. That did not happen in this case. I think the appellate Court's decision upholds the principle, the constitutional mandate of 401A that the waiver of counsel be knowing and on the record. If the defendant here had been given 45 years instead of 60, would the analysis still be the same, or 30, or something substantially less than 60? I think the analysis should still be the same in that what we have to look at when a defendant waives counsel is, what did he know at the time he waived? You know, the State points to the sentence he received, but that occurred over a year after he waived counsel. So the purpose of 401A is to make sure he understands the sentencing range at the time he waives. I mean, I realize, I think it would be a very different maybe question, but I do think that the threshold question is, what did he know when he waived counsel? So the fact that he learned of the 75-year sentence for the first time at sentencing doesn't somehow retroactively make it a knowing waiver, and the sentence he received at sentencing does not retroactively make it a knowing waiver. Mr. Scroggs, with regard to knowing the 75-year waiver, did the judge tell him it was 75 years, or did the assistant State's attorney? The assistant State's attorney said at sentencing. In this case, I think this is fairly common that the judge relied on the State's attorney for the law to admonish. So when it was admonished, the prosecutor told the judge the sentencing range, and then the judge used that to inform the defendant, which I don't think there's a problem with, but I do think, however the judge wants to get his information, it does need to be accurate. But, yes, the State's attorney informed the judge the maximum sentencing range is 75. Like I said, this is not a high burden that was easy enough to find out for sentencing. It should have been done at the time the defendant waived counsel. If there are no more questions, if possible, I would like to use my remaining time to address the third issue, the sufficiency of the evidence on the firearm element in this case. The State bore the burden here of proving beyond a reasonable doubt that Mr. Morgan possessed a firearm, the co-defendant, during this robbery. They did not meet that burden in this case for two reasons. The first is the witness's brief view of the handle of the item in Mr. Morgan's waistband was not a sufficient basis to prove that the item was a firearm, as that term is defined in the criminal code. Second, the only reasonable inference from the evidence presented by the State and the defense at this trial is that the BB gun that was found where Mr. Morgan was known to have discarded his weapon was the weapon that was used, that was the item that Mr. Morgan possessed during this crime. May I ask some standard questions here? Sure. And to the second point, you're saying that the only evidence here was that this was a BB gun. How do we – the jury rejected that, correct? The jury knew about the BB gun. The jury was instructed, had the option of finding him guilty of robbery rather than armed robbery. And the jury rejected that. So what is our standard of review? It's whether a rational juror could have found the elements. And I understand that the jury rejected that. I think that there's a couple reasons for that unrelated. But, you know, the prior fact is afforded deference, but it's not afforded a rubber stamp. I mean, I think the people at E. Smith, this court, made that very clear. You know, the reviewing court still needs to look at the evidence to make sure that the State met its burden. And in this case, I mean, it's almost – it borders on the absurd to think that this BB gun somehow was unrelated to this crime. I mean, I think if this was – if that had been a real gun and the State would have used it to convict Mr. Wright of armed robbery with a firearm, I don't think anybody would be making an argument, oh, well, that's – that was not connected to this case. So you're saying no rational juror could have said this gun was discovered a week later. It has no fingerprints. There's no physical evidence to tie it to the crime. You're saying it's irrational to look at that evidence in any other way? Yes, Your Honor, I believe so. I think – so, I mean, if the State's evidence, the State's theory, the State's – from the State's witnesses to what Detective Lee said at the grand jury, it's all very simple. Mr. Morgan had this item in his waistband when he left Baker Square. Mr. Wright and Mr. Morgan were approached by officers. They took off in different directions. Somewhere during the foot chase, Mr. Morgan discarded this item. They could not find the gun that night because of a lot of snow. If you look at the surveillance video and the photos, there was a lot of snow on the ground. When the snow melts, lo and behold, there's a BB gun that looks like an automatic, which is how Mr. Perez described what he saw in the waistband, is in the path where Mr. Morgan fled. I mean, I think if you look at a case like People v. Johnson, very similar facts. The two suspects are approached by officers outside a restaurant. They take off running. They're caught. They have proceeds but no gun. Two days later, there's a gun found in the gutter about a block away from the restaurant. In that case, defense counsel didn't even make an argument that that gun couldn't be tied to the crime because we know it would be. I think the state points to a comment made by the prosecutor in a sidebar about how, well, this is Rogers Park, there's just guns everywhere, which I think setting aside that that's not really evidence. Guns, BB guns, they have value. There's only one reason someone throws a gun down on the sidewalk or by the curb. That's when they're fleeing the police, which is exactly what happened in this case. So I think it's just the only reasonable inference is that this BB gun was the item that was used during this crime. And I also think beyond that, the brief view of the handle of this item would not have allowed. So I think when you put those two things together, the state did not meet its burden on that element. Now, I get that you said that the jury did find it. I think there was two other reasons that are in the brief that speak to that as well, and I probably won't have time to get to them. But, you know, Mr. Morgan told Detective Lee that he did this crime with a BB gun. That was admissible as a statement against penal interest under Illinois Rule of Evidence 804B3. That should have come in. That would have been compelling evidence, persuasive evidence, that this item was a BB gun. I mean, this court. Let me ask you, right before your leg goes off, may I ask you one more question about the record? At the instructions conference, the court gave the instruction of the lesser included, Robert. But the defendant objected to that. He didn't want the jury instructed on the lesser included. Isn't that a waiver of all of his arguments? No, Your Honor. I think that he was going for an all-or-nothing defense, which I do not believe is a waiver of the evidence that he tried to get introduced in this case. I don't – there's no idea. There's no – his chosen strategy during closing argument or during the instructions conference does not waive its evidentiary issue. In fact – and, of course, he could argue it wasn't me, but whoever did it, it was this BB gun, which is why he introduced evidence of this BB gun at trial. And he tried to introduce more that should have been admitted and was not. Your time has expired. Thank you. Thank you. Rebuttal. Your Honors, defendant's position with respect to – in order for there to be a knowing and intelligent waiver, and the only way for that to be the case is for the defendant to know with precise knowledge the exact term of sentencing is not the law, has never been the law either in this state. It is not the law of the land. I said before that Ferrara v. California was a leading case on self-representation. Defendant cites to Von Mulkey a far older case. That's not the law of the land. Why? There's a number of reasons. First of all, the opinion that he cites to Von Mulkey is a plurality opinion, not a majority opinion, and it's never been adopted by the U.S. Supreme Court. It mentions a lot of things, a whole laundry list of admonitions that have never been adopted. But besides that, the narrow grounds of decision in Von Mulkey had to do with the fact that the defendant in that case was a German-American being prosecuted during World War II for acts of treason. There was some concern that the defendant did not receive fair proceedings. Indicative of that was there was some indication that the defendant had been promised counsel and that counsel was never given to the defendant in that case. And the only legal information the defendant received in that case came from an FBI agent, and the legal information at that FBI agent was dubious, was apparently possibly incorrect at that. Ferretta had the opportunity, because it was the later case, to adopt the reasoning of Von Mulkey. It didn't. It did refer to Von Mulkey. There's a CF citation that I recall seeing in Ferretta to Von Mulkey. It did not adopt. It was not informed by the plurality decision in Von Mulkey. It was very clear that technical legal knowledge is not a requirement to the exercise of the right of self-representation, that, in fact, all that need happen is that the defendant be made aware of the dangers of self-representation. A very broad statement, not a specific statement delineating exact, precise knowledge. That is exactly contrary to the law of the land. And it's actually contrary to the quartet of cases that this Court decided from Johnson to Kidd, which has always required just substantial compliance. In every one of those cases, there was a flaw in the sentencing range. There are myriad other cases that I cited in my brief. I'm not going to waste the Court's time. They're in my brief that both in this Court, in 401 and 402, the appellate court, where there have been errors with respect to the sentencing range. And that has not been a hindrance to a finding that the ultimate waiver was knowing and intelligent. With respect to the sufficiency of the evidence argument that defendant raises, he says that the view was brief. It's important to note that the manager of the Baker Square in this case had not one but two opportunities to see the gun. The gun was flashed to him two times, not just once. And more than that, he had the gun pushed up against his back. So he not only saw the gun twice, he felt it in his back. He had experience with firearms. He had experience with automatic firearms. He had gone hunting with similar weapons. He was 100 percent sure that this was a firearm. His testimony was corroborated by the server, who was also very familiar with firearms  With respect to the BB gun, it was found a week later. I take issue with the statement that the defendant makes here. I think it goes too far. It is not fully supported by the facts. He says that the BB gun was found in an area where the defendant was known to have discarded the weapon. I take issue with that. The fact of the matter is that these defendants, the defendant and co-defendant, were under surveillance from the time they left the Baker Square. There had been a series of Baker Square robberies, and they were under surveillance from the time they left the Baker Square to the point where they are on Estes Street. And Officer Cirincione has both of these individuals in his view the entire time until the time that they split up. And the co-defendant runs to the parking lot, runs to the parking lot in this mini-mall, strip mall. It's at that point that he loses contact, loses eye visual with the co-defendant. Because it's at that point that he chooses to pursue a parallel pursuit course. He decides to go around the back of the mini-mall, in essence, to head the defendant off at the pass, the co-defendant off at the pass. So it's at that point where a co-defendant is heading to the mini-mall parking lot that he loses contact. To say that the area on the street, of Estes Street, is the area where a defendant was known to have discarded the weapon, I don't believe that is supported at all by the evidence in this case because Officer Cirincione had visual of the co-defendant at that point. He loses visual. And at that point, I fully admit that once he lost visual, from that point until he re-established contact with the co-defendant, the co-defendant could have discarded the firearm that he was using in this case. But the BB gun that was recovered was found on the street. The defendant references the co-defendant's statement. The co-defendant's statement says that I discarded the weapon by a fence. Well, there's no fence by the street curb where this firearm was found. So even that is contrary, contradictory to the evidence that came out at trial. Defendants, when viewing the evidence and the like, most favorable to the people, there's no question that a rational prior fact could and did find the defendant guilty of armed robbery with a firearm in this case. If there are no other questions, again, the people respectfully request this. Do you have a statement against penal interest specifically with respect to I did it with the BB gun? Your position on that? Our position is that the defendant abandoned that particular issue. The trial court, the only ruling that the trial court made in this case was correct at the time it was made. Under 804B3, there is a strict requirement that the declarant be unavailable under Rule 804. In order for an 804B3 statement to be admitted, there must be an unavailable declarant. Now, that did come about in this case, but after the fact, co-defendant came into court and invoked his Fifth Amendment privilege against testifying. At that point, he was an unavailable witness. Defendant then had every opportunity to seek admission of the statement under 804B3, under this court's rule, and didn't. And, therefore, abandoned that issue for decision by this court. And, in fact, it's really contrary to the defense that the defendant raised. Defendant's defense was, as my opponents pointed out, was an all or nothing defense. It wasn't, oh, I'm only guilty of the lesser offense of robbery. He fought against that being an issue in this trial. He very much was convinced of his own innocence and wanted to convince the jury of that fact. There are no other questions. The people respectfully request that this court confirm defendant's convictions. Thank you. Case Number 119561, People v. Wright, will be taken under advisement as Agenda Number 8. Mr. Walters, Mr. Stroh, thank you for your arguments. You are excused.